IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                              |   |                               |
|------------------------------|---|-------------------------------|
| JOHN F. "JEF" CURRAN         | * |                               |
| Petitioner,                  | * |                               |
| v.                           | * | Criminal No. RDB-11-00687     |
| UNITED STATES OF AMERICA     | * | Civil Action No. RDB-14-3932  |
| Respondent.                  | * |                               |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

On May 14, 2013, Petitioner John F. "Jef" Curran, III ("Petitioner" or "Curran") pled guilty to one count of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff. Re-arraignment, ECF No. 107. The charges resulted from the sale of $1.9 million of "Gargoyles" company stock.[1] *Id.* This Court sentenced Petitioner to a term of thirty-seven months of incarceration. J., ECF No. 128. Curran later noted an appeal (ECF No. 130) to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit dismissed his appeal on August 29, 2014, concluding that Curran knowingly and voluntarily waived his right to appeal in his guilty plea, and that the issues Curran raised in his appeal fell within the scope of his waiver. Order, ECF No. 147.

On December 17, 2014, Curran filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 171) asserting that he received ineffective

---

[1] The Indictment described Gargoyles as an "advanced materials application company." *See* Indictment, ECF No. 1.

assistance of counsel in violation of the Sixth Amendment.[2] U.S. CONST. amend. VI. In his §

2255, Curran also challenges this Court's Restitution Order.[3] Curran filed a "Reply Brief"

(ECF No. 175) on January 29, 2015, prior to the Government filing its response (ECF No.

177) on April 2, 2015. Curran then filed a second Reply Brief (ECF No. 180) on May 4,

2015.

Before filing a second reply, Curran filed two Motions to Correct his Presentence

Report (ECF Nos. 150, 170) pursuant to Rule 36 of the Federal Rules of Criminal

Procedure.[4] Curran also submitted a Motion to Stay Execution of Sentence and Immediate

---

[2] Curran's ineffective assistance of counsel claims solely address representation by his second attorney. *See infra*, p. 3.

[3] 28 U.S.C. § 2255 applies to "a prisoner in custody … claiming the right to be released." Curran's challenge to restitution is not a valid § 2255 claim because restitution does not affect his custody. Curran correctly recognizes that an appeal, not collateral attack, is the proper avenue to challenge restitution orders. Mot. to Vacate, at 19. In Curran's Plea, he waived his right to appeal. Plea Agreement ¶ 14. As noted by the Fourth Circuit in *United States v. Linder*, "[w]here the petitioner only waives the right to [direct] appeal, he is not precluded from filing a petition for collateral review. *But he is precluded from raising claims that he could have raised on direct appeal*." 552 F.3d 391, 397 (4th Cir. 2008) (citations omitted) (emphasis added). As Curran may not circumvent the terms of his Plea Agreement by challenging this Court's restitution order through a § 2255 motion, this request must be denied.
Curran also asserts in this motion that he was never provided with a Restitution Order. He fails to recognize that the Judgement and Commitment Order in this case which provided restitution in the amount of $1,250,768.75 constituted the Restitution Order. This Court received information in accordance with the Plea Agreement from the Government which provided this amount of restitution. Sentencing, ECF No. 125.

[4] The first Motion to Correct (ECF No. 150) argues that the Presentence Report ("PSR") contained a clerical oversight, "sentence enhancement guideline calculations based upon restitution and not loss," which resulted in an unwarranted upward departure at sentencing. Mot. to Correct Presentence Report. Rule 36 motions apply only to clerical errors and are not the proper vehicle for challenging the substance of the information in a presentence report. *United States v. Wilkes*, 376 Fed. App'x 295, 296 (4th Cir. 2010). This Court has already instructed Curran that when "attacking the validity of his sentence . . . the appropriate avenue to bring [a] challenge [is] by way of a § 2255 motion." Mem., 1, ECF No. 164. As Curran is *pro se*, this motion will be treated as a supplement to his later-filed § 2255. However, this motion is simply a re-hashing of an argument for ineffective assistance of counsel already raised in his § 2255 Petition. As in his § 2255 Petition, Curran ignores that he agreed the loss was at least $1,000,000 for purposes of calculating the advisory sentence in his Plea Agreement, which warranted an upward departure of 16. *See infra* Section I.a.iii, note 10. As this Court later considers and dismisses this contention, this claim is also without merit. *Id.*
Curran also filed a second Motion to Correct (ECF No. 170), claiming that the PSR erroneously states Curran's address. This claim is a matter for the Federal Bureau of Prisons to resolve, not this Court.

2

Release (ECF No. 181),[5] a Request for Subpoena (ECF No. 186),[6] and numerous requests for a hearing (ECF Nos. 173, 182, 183, 184, 187).[7]

The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Curran's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 171) is DENIED; Petitioner's Motions to Correct his Presentence Report (ECF Nos. 150, 170) are DENIED; Petitioner's Motion to Stay Execution of Sentence and Immediate Release (ECF No. 181) is DENIED; Petitioner's Request for Subpoena (ECF No. 186) is DENIED; and Petitioner's Request for a Hearing (ECF No. 187) is DENIED.

## **BACKGROUND**

This Court notes that documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

On November 11, 2012, Curran was charged with seven counts of security and mail fraud. Indictment, ECF No. 1. Curran expressed dissatisfaction with his counsel; this Court

---

[5] Curran's Motion to Stay simply reiterates the claims raised in his § 2255 Petition. As Curran is not entitled to relief on these claims, this motion is dismissed.
[6] Curran seeks to gain access to Assistant United States Attorney Leo Wise's "colloquy and instructions" to the grand jury that resulted in his indictment. Subpoena Request, 1, ECF No. 186. He claims that the instructions will show that the Government failed to assert all requisite elements of securities fraud. *Id.* There is no legal basis for Curran's subpoena request. The United States Court of Appeals for the Fourth Circuit has instructed that "[w]e will not hear 'a challenge to the reliability or competence of the evidence presented to the grand jury.'" *United States v. McDonald*, 61 F.3d 248, 252 (4th Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988)). Furthermore, Curran is mistaken as to the necessary elements of securities fraud, *see infra* Part I. This subpoena request is without merit and will be DENIED.
[7] Curran requests an evidentiary hearing regarding: (1) Fourth Circuit case law, specifically *United States v. Reed*, 538 Fed. App'x 265, 267 (4th Cir. 2013) (per curiam)(unpublished); (2) due process flaws; and (3) the concessions of Government's Response Brief. Request for Evidentiary Hearing, ECF No. 187. As discussed in Part I, his first request is without merit. Curran's due process claim cannot prevail as he simply asserts due process violations without identifying them for this Court. Finally, this Court is unable to ascertain what concessions in the Government's reply brief Curran references. As there are no grounds for a hearing, his request will be denied.

3

granted Counsel's Motion to Withdraw (ECF No. 65) on January 30, 2013. Curran had already obtained alternate counsel by November 20, 2012. *See* Notice of Att'y Appearance, ECF No. 50.

On May 14, 2013, Curran pled guilty to one count of securities fraud, admitting that from January 2009 to September 2010, he sold $1.9 million worth of stock in Gargoyles, and that he falsely represented to investors and potential investors that the company had customers, sales contracts and purchase orders. Plea Agreement, ECF No. 111-1. In his Plea Agreement and Plea Colloquy, Curran admitted that the false statements he made were material and that he acted knowingly and willfully and with the intent to defraud. *Id.*; Guilty Plea Tr., 30:20, 30:23, 30:25, ECF No. 111-2.

## DISCUSSION

### I. § 2255 Petition

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) the court lacked "jurisdiction to impose the sentence, . . . [(3)] the sentence was in excess of the maximum authorized by law, or [(4) the sentence] is otherwise subject to a collateral attack." 28 U.S.C. § 2255.

To state a claim for relief under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of

4

reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts observe a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. The second, or "prejudice," prong requires that the defendant demonstrate that his counsel's errors deprived him of a fair trial; i.e., that "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 687, 694.

In applying the *Strickland* test, the United States Court of Appeals for the Fourth Circuit has noted that it is not necessary to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee,* 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland,* 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based on a deficiency in satisfying either the "performance" or "prejudice" prong of the two part *Strickland* test. *See Strickland,* 466 U.S. at 697.

   a. Ineffective Assistance of Counsel

With these principles in mind, this Court turns to Petitioner's claim of ineffective assistance of counsel. Curran asserts three primary arguments to support his claim. In the first two arguments, Curran contends that his indictment and plea agreement failed to include two elements required for a security fraud conviction under 15 U.S.C. §§ 78j(b) and 78ff: (1) purchaser reliance resulting in economic loss; and (2) scienter. Curran claims that counsel's flawed advice and investigation concerning these elements led to his guilty plea, as the Government would not have been able to establish these elements at trial. In the third argument, Curran claims that counsel failed to address loss determination, as both a sentencing factor and as an element of his charges. It is well settled that the Sixth

5

Amendment right to counsel applies at the critical stage of plea bargaining. *See, e.g., Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Padilla v. Kentucky*, 559 U.S. 356 (2010). "Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland." *See Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012) (citing *Hill*, 474 U.S. at 57).

In *Hill*, 474 U.S. at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)), the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" The United States Court of Appeals for the Fourth Circuit has instructed that a defendant's statements in a plea agreement are binding absent clear and convincing evidence to the contrary. *Fields v. Attorney General of the State of Maryland*, 956 F.2d 1290, 1299 (4th Cir. 1992). "[S]tatements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea constitute a formidable barrier to attacking the plea." *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996) (quoting *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992)) (quotation marks omitted). Finally, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005).

This Court notes that when Curran sought to withdraw his guilty plea, he did not do so based on frustration with counsel; instead he continued to "accept full responsibility for his conduct." Mot. to Withdraw Plea, 1, ECF No. 111.[8] Further, in his Rule 11 colloquy, Curran agreed that he was fully satisfied with counsel based on "the utter completeness with which they stepped me through the indictment, the evidence the [G]overnment maintains, the possible defenses" and agreed that his counsel had done everything Curran asked him to do. Guilty Plea Tr., at 9.

### i. Counsel's Failure to Investigate Reliance as Element

Curran asserts that counsel's failure to make reasonable determinations as to the sufficiency of the evidence led to his guilty plea. Specifically, he argues that the Government was required to show reliance resulting in stock purchaser loss to convict him of securities fraud. He maintains that counsel's legal advice was deficient because he was not told that reliance is a required element. In support of this contention, Curran cites to *United States v. Reed*, 538 Fed. App'x 265, 267 (4th Cir. 2013) (per curium), an unreported securities fraud case from the Fourth Circuit Court of Appeals, which he claims stands for the proposition that the "Government need prove that the victim(s) reliance on such alleged misrepresentations caused them economic harm: loss." Mot. to Vacate, at 11.

Yet Petitioner's argument is misguided. First, as *Reed* itself recognizes, unreported cases are not precedent in this circuit. *See Reed*, 538 F. App'x at 265. Second, the overwhelming weight of authority reveals that the Government is not required to prove

---

[8] In his most recent submission to the Court, Curran states that he has "always maintained that I am innocent of the charges as alleged." Correspondence from John Curran, 3, ECF No. 188. This is simply not the case, as his statements in the Rule 11 Colloquy, Plea Agreement, and Motion to Withdraw his Plea Agreement directly contradict this claim.

7

reliance in a securities fraud action. *See SEC v. Pirate Investor LLC*, 580 F.3d 233, 239 n.10 (4th Cir. 2009); *United States v. Vilar,* 729 F.3d 62, 88 (2d Cir. 2013) ("Reliance, however, is not an element of a criminal case brought by the government under Section 10(b) or Rule 10b–5."), *cert. denied,* —— U.S. ——, 134 S.Ct. 2684 (2014). *See also SEC v. Goble,* 682 F.3d 934, 942 (11th Cir. 2012); *SEC v. Apuzzo,* 689 F.3d 204, 213 (2d Cir. 2012); *McCann v. Hy–Vee, Inc.,* 663 F.3d 926, 931-32 (7th Cir. 2011); *United States v. Jenkins,* 633 F.3d 788, 802 (9th Cir. 2011); *SEC v. Tambone,* 597 F.3d 436, 447 n. 9 (1st Cir. 2010); *SEC v. Wolfson,* 539 F.3d 1249, 1256 (10th Cir. 2008); *United States v. Haddy,* 134 F.3d 542, 544, 549-51 (3d Cir. 1998); *SEC v. Blavin,* 760 F.2d 706, 711 (6th Cir. 1985). Throughout his submissions, Curran confuses the elements of a criminal securities fraud case with the elements of a private securities fraud action. *Compare Pirate Investor LLC*, 580 at 239, *and Vilar,* 729 F.3d at 88 ("[T]he [G]overnment must prove that in connection with the purchase or sale of a security the defendant, acting with scienter, made a material misrepresentation . . . or used a fraudulent device . . . In order to impose criminal liability, the [G]overnment must also prove that the defendant willfully violated the law") (citation omitted), *with Janus Capital Grp., Inc. v. First Derivative Traders*, —— U.S. ——, 131 S. Ct. 2296, 2301 (2011), *and Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 605 (4th Cir. 2015) ("Generally, a [private] plaintiff asserting a claim under Section 10(b) must establish: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.") (citation omitted).

Curran's interpretation of *Reed* fails in light of this overwhelming precedent. The Government was under no obligation to prove reliance. Counsel thus performed reasonably when he did not raise reliance during the plea bargain.

ii. <u>Scienter Element of Securities Fraud</u>

Similarly, Curran argues that, to prevail in a criminal case, the Government's "scienter requirement demands . . . a knowing material misrepresentation," and that counsel's failure to make reasonable determinations as to the sufficiency of the evidence led to his guilty plea. Mot. to Vacate, at 7. More accurately stated, the Government must first prove "'scienter' . . . a mental state embracing intent to deceive, manipulate, or defraud," *Pirate Investor LLC*, 580 F.3d at 241 (citations omitted), and, to obtain a criminal conviction, that the defendant acted willfully. 15 U.S.C. § 78ff(a); *see also United States v. O'Hagen*, 521 U.S. 642, 666 (1997).

Curran argues that, if counsel investigated the facts and the applicable law, he would have advised Curran not to plead guilty due to the allegedly insufficient evidence with respect to the requisite intent. Mot. to Vacate, at 7. Curran ignores that he *admitted* to such conduct in his signed Plea Agreement. In the Plea Agreement, he stated that the "false statements and misrepresentations were material . . . [a]t all times, Curran acted knowingly and willfully with intent to defraud." Plea Agreement ¶ 2. He echoed this statement at his Rule 11 Colloquy, in which Curran answered affirmatively that "[he] falsely represented to investors and potential investors that Gargoyles had customers, sales contracts, and purchase orders for its contracts when, in fact, it did not . . . These false statements and misrepresentations were material . . . [a]nd at all times he acted knowingly and willfully with the intent to defraud." Guilty Plea Tr., at 29:3-31:3.

9

In his § 2255 Petition, Curran includes correspondence with a "legal team" (ECF No. 171-3) and Gargoyles, Inc. Private Placement Offering (ECF No. 171-2). Under *Lemaster*, these attachments fail to create an extraordinary circumstance sufficient to refute his admission of intent to defraud at the Rule 11 Colloquy and in the Plea Agreement.[9] Given these admissions and the lack of an affirmative showing of counsel's failures, Counsel's conduct was proper and did not fall below the objective standard of reasonableness required under the first prong of *Strickland*.

### iii. Loss Determination

Curran further asserts that counsel was ineffective in addressing loss determination throughout the proceedings. Curran contends that his plea "stipulated a loss amount of up to an amount not in excess of $1,963,065.00," and therefore, his counsel had an obligation to subject this amount to adversarial testing. Mem. in Support of Mot. to Vacate, Set Aside, or Correct Sentence, 16, ECF No. 171-1.

Petitioner, however, ignores that he agreed to an amount of loss of at least $1,000,000 in his Plea Agreement for purposes of calculating an advisory sentence under the United States Sentencing Guidelines.[10] Plea Agreement ¶ 6. Furthermore, Curran agreed with the Government that "with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments . . . will be raised or are in dispute." *Id.* ¶ 8. Finally, Curran acknowledged that he "reviewed the

---

[9] The legal document provided — an itemized bill — appears to refer to Gargoyles's corporate formation, not Curran's intent. Bill line items include: corporate name and trademark searches; correspondence on patent filing costs; and a review of a director confidentiality agreement.

[10] Curran asserts that the Presentence Report ("PSR") lists his loss as less than $1,000,000. ¶ 15, ECF No. 115. The PSR clearly contains a typographical error. Viewed in context, both Curran's Plea Agreement and the Sentencing Guidelines provision to which the PSR refers to, U.S.S.G. §2B1.1(b)(1)(I), clearly references a loss of at least $1,000,000, resulting in a level enhancement of 16.

Factual and Advisory Guidelines Stipulation with my attorney, and [] do not wish to change any part of it." *Id.*, at 10.

In his second Reply, Curran recasts this claim by arguing that the Government was required but was unable to prove a loss,[11] and therefore his conviction should be vacated.[12] Second Reply, at 2. Curran ignores that findings for the total losses are required under Chapters 109A, 110, 110A and 113A of Title 18 for offenses committed on or after September 13, 1944, but before April 23, 1996. As Curran's offense was committed after April 23, 1996, this Court was not required to make a finding regarding loss.[13]

## **CONCLUSION**

For the foregoing reasons, Petitioner John F. "Jef" Curran's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 171) is DENIED; Petitioner's Motions to Correct his Presentence Report (ECF Nos. 150, 170) are DENIED; Petitioner's Motion to Stay Execution of Sentence and Immediate Release (ECF No. 181) is DENIED; Petitioner's Request for Subpoena (ECF No. 186) is DENIED; and Petitioner's Request for a Hearing (ECF No. 187) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order

---

[11] Again, Curran misreads the precedent of this Circuit. *See supra* Part I.a.i.
[12] Throughout his submissions to this Court, Curran confuses the PSR's recommendations on sentencing calculations with its recommendations on restitution. *See* Mot. to Stay Execution of Sentence and Immediate Release, ECF No. 181; Second Reply. In his second reply brief, Curran asserts that "the Government was to produce a calculation argument at sentencing." Second Reply, at 2. Curran ignores that the PSR's recommendations in that section refer to the Government's burden to establish the restitution amount at sentencing, not to the agreed-upon Offense Level. *See* Presentence Report, ¶¶ 22, 62. This conclusion is evident as it is contained in the "Fines and Restitution" part of the PSR. *Id.* Furthermore, the Government's burden of demonstrating loss concerning restitution was met at sentencing. *See* Sentencing 58:20-59:9, 90:9-90:12.
[13] Again, reliance, economic loss, and loss causation relate to who (other than the government) may bring suit and not to the conduct prohibited by Section 10(b). *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 172-73 (1994). *See also supra* Part I.a.i.

adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.


Dated: November 4, 2015

                                                           /s/

                                                   Richard D. Bennett
                                                   United States District Judge